IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THOUSAND OAKS BARREL CO. LLC, a Virginia Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,<br><br>Defendants. | Case No. 1:24-cv-00958 (MSN/LRV) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Thousand Oaks Barrel Co., LLC's ("Plaintiff") Motion for Default Judgment (the "Motion"). (Dkt. No. 214.) Plaintiff seeks entry of a default judgment against certain Defendants identified in Plaintiff's Motion. Plaintiff's Amended Complaint identified 131 Defendants. (*See* Dkt. No. 15-1.) During the litigation, Plaintiff filed notices of voluntary dismissal with respect to most Defendants and the Court granted those dismissal requests. Additionally, of the 25 Defendants for which Plaintiff moved for default judgment, the following two have now been dismissed: Defendant Nos. 97 and 53. (*See* Dkt. Nos. 226, 227.) Thus, this Report and Recommendation applies to the remaining 23 Defendants (collectively the "Defaulting Defendants").[1]

The undersigned magistrate judge files this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). A copy will be provided to all interested parties. For the reasons articulated

---

[1] As of the date of this Report and Recommendation, the Defaulting Defendants are Defendant Nos. 8, 15, 29, 32, 36, 38, 39, 44, 47, 48, 52, 55, 58, 59, 66, 75, 77, 79, 81, 83, 89, 96, and 98.

1

below, the undersigned recommends that Plaintiff's Motion for Default Judgment (Dkt. No. 214) be **GRANTED**.

I. **Procedural Background**

On June 4, 2024, Plaintiff filed a Verified Complaint against the defendants identified in Schedule A thereto for infringement of one or more claims of U.S. Patent No. 11,744,256 B2 (the "'256 Patent"), titled "Device and method for Imparting Smoked Flavors to Beverages and Foodstuffs." (Dkt. No. 1 ¶¶ 1, 43–48.) Defendants are individuals, companies, and unincorporated business associations that reside in both domestic and foreign jurisdictions. (*Id.* ¶ 3.) On June 5, 2024, Plaintiff filed a Motion for Entry of a Temporary Restraining Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by Email. (Dkt. No. 8.) On June 18, 2024, Plaintiff filed an Amended Complaint and renewed the Motion for Entry of a Temporary Restraining Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by Email. (Dkt. Nos. 15, 16.) The Court granted Plaintiff's renewed motion on June 21, 2024. (Dkt. No. 20.) On July 3, 2024, Plaintiff moved to extend the Temporary Restraining Order from July 5, 2024 to July 26, 2024. (Dkt. No. 21.) The Court granted Plaintiff's motion later that same day. (Dkt. No. 25.) On July 18, 2024, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. No. 46.) Plaintiff requested that the Court freeze the seller accounts of the then-remaining Defendants identified in Schedule A. (*Id.*) On July 26, 2024, the Court granted Plaintiff's Motion for a Preliminary Injunction, finding, among other things, that Plaintiff "established that it is likely to succeed on its utility patent infringement claim." (Dkt. No. 69 at 1.)

As discussed above, over the course of this litigation, Plaintiff has filed notices of voluntary dismissal against certain Defendants; the Court has since dismissed those Defendants. On October

15, 2024, Plaintiff filed a Request for Entry of Default against the then-remaining Defendants.[2] (Dkt. No. 205.) The Clerk of Court entered the default on October 18, 2024. (Dkt. No. 210.) On November 7, 2024, Plaintiff filed a Motion for Default Judgment. (Dkt. No. 214.) That same day, Plaintiff served the Defaulting Defendants with copies of the Motion for Default Judgment (Dkt. No. 214), Memorandum in Support (Dkt. No. 215), and Notice of Hearing Date (Dkt. No. 216). (*See* Dkt. No. 217.) On December 13, 2024, the undersigned held a hearing on Plaintiff's Motion for Default Judgment. Counsel for Plaintiff appeared at the hearing; no person appeared on behalf of any of the Defaulting Defendants. At the conclusion of the hearing, the undersigned took the Motion under advisement.

## II. **Factual Background**

The following facts are established in the Amended Complaint.[3] Plaintiff is a Virginia limited liability company that maintains a principal place of business at 9113 Euclid Avenue, Manassas, VA 20110. (Dkt. No. 15 ¶ 2.) Plaintiff is the exclusive licensee of the '256 Patent[4] and the manufacturer of the Foghat Cocktail Smoker, which allows "professional bartenders and home users alike to add flavor to cocktails and foods via sources of smoke." (*Id.* ¶¶ 2, 14.) The '256 Patent was duly and legally issued by the U.S. Patent and Trademark Office on September 5, 2023. (*Id.* ¶ 18.) Of the '256 Patent's nineteen (19) claims, claims 1, 9, and 10 are independent claims directed to the Foghat Cocktail Smoker, "a device for imparting smoked flavors to beverages and

---

[2] Specifically, Plaintiff requested an entry of default against Defendant Nos. 8, 15, 29, 32, 36, 38, 39, 44, 47, 48, 52, 53, 55, 58, 59, 66, 75, 77, 79, 81, 83, 89, 96, 97, and 98.

[3] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision))).

[4] Soak Limited, London, Great Britain, is the exclusive owner of the '256 Patent by assignment. (Dkt. No. 15 ¶ 18.)

foodstuffs." (*Id.* ¶ 20.) Plaintiff's Foghat products are commercial embodiments made under the '256 Patent. (*Id.* ¶ 14) Plaintiff maintains quality control standards for all of its products sold under the Foghat brand. (*Id.* ¶ 16.) Genuine Foghat products are distributed through a network of Plaintiff's licensees, distributors, and retailers via reseller webstores and through Plaintiff's own webstore, www.1000oaksbarrel.com. (*Id.*) Plaintiff has marked its Foghat products with notices of the '256 Patent. (*Id.* ¶ 36.)

Defendants are individuals, companies, and unincorporated business associations that reside in both domestic and foreign jurisdictions. (*Id.* ¶ 3.) Defendants are not licensees of the '256 Patent, either expressly or implicitly, and they do not enjoy or benefit from any rights in or to the '256 Patent. (*Id.* ¶ 18.) They nevertheless offer and sell various smoker devices that allegedly practice the claims of the '256 Patent (the "Accused Products"). (*Id.* ¶ 4.) Defendants sell the Accused Products through fully interactive commercial webstores hosted on Amazon.com and Etsy.com (the "Infringing Webstores"). (*Id.* ¶¶ 4, 21.) Amazon.com and Etsy.com do not require sellers, including Defendants, to publicly post their true names and contact information. (*Id.* ¶ 4.) Accordingly, the true names, identities, and addresses of Defendants are unknown. (*Id.*)

Many of the Accused Products are manufactured by factories in China and sold wholesale either directly or through China-based e-commerce websites. (*Id.* ¶ 17.) For example, Defendants selling on Amazon.com purchase Accused Products in bulk from Chinese factories or e-commerce websites to sell on the Infringing Webstores. (*Id.*) Defendants sell the Accused Products to consumers within the United States, including to consumers in the Commonwealth of Virginia and the Eastern District of Virginia. (*Id.* ¶ 4.) "For example, the Accused Products may be purchased by Virginia residents using the Amazon 'Prime' online order system and delivered by an Amazon Prime delivery vehicle in this district." (*Id.*)

4

### III. Proposed Findings of Fact and Law

#### A. Jurisdiction and Venue

A court must have both subject matter jurisdiction over the claims and personal jurisdiction over the defaulting parties before it can render a default judgment, and venue must be proper.

First, the Court has subject matter jurisdiction over this action. Plaintiff brings claims for infringement of the '256 Patent under 35 U.S.C. §§ 271(a)–(b). (Dkt. No. 15 ¶¶ 44, 45.) The undersigned thus finds that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (civil action arising under any Act of Congress relating to patents and trademarks). (*Id.* ¶ 8.)

Second, the Court may exercise personal jurisdiction over the Defaulting Defendants because they conducted business within this District and have sufficient "minimum contacts" with Virginia. (*Id.* ¶ 13.) To exercise personal jurisdiction over a matter, both the Virginia long-arm statute and federal due process standards must be satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Virginia's long-arm statute, Va. Code § 8.01-328.1, extends the limits of a court's jurisdiction to the extent permitted by the Due Process Clause, meaning essentially the same standard is required for both. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Federal due process standards are met if the defendant maintains certain minimum contacts with the forum state, such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). When a defendant's contacts with the forum state are electronic, the Court may, consistent with due process:

> [E]xercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

5

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). Here, the Defaulting Defendants operate Infringing Webstores through which residents of this District can purchase Accused Products, offer shipping to the United States, including Virginia, accept payment in U.S. dollars and funds from U.S. bank accounts, and have sold and are continuing to sell Accused Products to residents of Virginia. (Dkt. No. 15 ¶¶ 10, 38); *see also Ontel Prods. Corp. v. Unincorporated Associations Identified in Schedule A*, No. 1:21cv1452 (MSN/JFA), 2022 WL 9874815, at *6 (E.D. Va. Aug. 12, 2022), *report and recommendation adopted*, No. 1:21cv1452 (MSN/JFA), 2022 WL 4368157 (E.D. Va. Sept. 21, 2022) (finding personal jurisdiction where defendants "used internet stores through which residents of this district could purchase products that could then be shipped to this district, and, in fact, defendants actually shipped counterfeit HUGGLE products to this district.").

Third, venue is proper because the Defaulting Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to Plaintiff's claims—the selling of counterfeit goods—occurred in this District. (Dkt. No. 15 ¶¶ 11–12); *see also* 28 U.S.C. §§ 1391(b)–(c); 28 U.S.C. § 1400.

For the reasons stated above, the undersigned finds that this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defaulting Defendants, and that venue is proper in this Court.

### B. Service of Process

The Defaulting Defendants are foreign individuals or entities. (*See* Dkt. No. 215-1 at 3–6 (listing addresses of Defaulting Defendants as provided to Plaintiff by Amazon).) Federal Rule of Civil Procedure 4(f) authorizes service on an individual in a foreign country by three means:

> (1) [B]y any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give Notice . . . or (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)–(3). Rule 4(h)(2) authorizes service of process on foreign corporations "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f) "does not denote any hierarchy or preference of one method of service over another." *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). To fulfill the due process requirements under Rule 4(f)(3), a court must approve a method of service that is "reasonably calculated to give notice to defendant." *Id.*

On June 21, 2024, the Court permitted Plaintiff to "serve the complaint and summons upon foreign Defendants using the email addresses determined during the course of limited discovery." (Dkt. No. 20 at 3.) Plaintiff filed Proposed Summonses on July 10, 2024. (Dkt. No. 33.) The Clerk of Court issued the Summonses on July 16, 2024, and the Summonses were returned executed on October 11, 2024. (Dkt. Nos. 43, 203.) On October 15, 2024, Plaintiff filed a declaration affirming that the Defaulting Defendants were served by email with the Summons and Amended Complaint. (Dkt. No. 205-2 ¶ 3.) Based on the foregoing, the undersigned finds that service of process has been accomplished in this action.

### C.   Joinder of the Defaulting Defendants

Under Federal Rule of Civil Procedure 20(a)(2), multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

7

Fed. R. Civ. P. 20(a)(2)(A)–(B). Additionally, under Rule 21, the Court may, on motion or "on its own . . . on just terms, add or drop a party," including when doing so would not affect the joined parties' substantive rights and would not otherwise cause prejudice to those parties. Fed. R. Civ. P. 21; *see also Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012). Here, the undersigned finds that, under Rule 20, joinder of the Defaulting Defendants in a single action is proper because the facts established by the Amended Complaint raise common questions concerning the infringement of Plaintiff's rights in the '256 Patent. The undersigned further finds that the Defaulting Defendants may be joined under Rule 21 because "none of the defaulting defendant[s] . . . are prejudiced by joinder, as their liability is established by their own default." *LendingClub Bank v. LendingClub.com*, No. 1:22cv484, 2023 WL 2581308, at *4 (E.D. Va. Mar. 20, 2023).

### D.     Grounds for Entry of Default

Default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Here, the Defaulting Defendants were required to file a responsive pleading by August 9, 2024, twenty-one (21) days after they were served via email on July 19, 2024. *See* Fed. R. Civ. P. 12(a). To date, none of the Defaulting Defendants have filed a responsive pleading, and the time for doing so has expired. On October 15, 2024, Plaintiff filed a Request for Entry of Default. (Dkt. No. 205.) The Clerk of Court entered a default against the Defaulting Defendants on October 18, 2024. (Dkt. No. 210.) The undersigned finds that the Defaulting Defendants failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to the Defaulting Defendants.

### E. Liability

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or allegations regarding liability that are not well-pleaded. *Ryan*, 253 F.3d at 780. Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint states a claim upon which relief can be granted. To meet this standard, the complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may also consider "documents attached to the complaint and those incorporated by reference . . . ." *Audio MPEG, Inc. HP Inc. v. Societa Italiana Per Lo Sviluppo Dell' Elettronica Spa*, No. 2:15cv73 (HCM/RJK), 2016 WL 7010947, at *3 (E.D. Va. July 1, 2016) (citing *Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004)). In determining whether allegations are plausible, the Court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

Plaintiff seeks default judgment against the Defaulting Defendants on its claim for infringement of the '256 Patent under 35 U.S.C. §§ 271(a)–(b). (Dkt. No. 15 ¶¶ 43–48 (Count I).) While Plaintiff's Amended Complaint does not specify separate counts of infringement of the '256 Patent, Plaintiff has alleged both direct infringement and indirect infringement of the '256 Patent. (*See id.* ¶¶ 44–45.) To prevail on a claim for indirect infringement, a plaintiff must first allege a claim for direct infringement. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d

9

1022, 1033 (Fed. Cir. 2002). Accordingly, the undersigned first addresses Plaintiff's claim for direct infringement and then turns to Plaintiff's claim for indirect infringement.

### 1. *Direct Infringement*

Section 35 U.S.C. § 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent thereof, infringes the patent." 35 U.S.C. § 271(a). "[D]irect infringement is a strict-liability offense that does not require knowledge of the patent or intent to infringe." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. 2017); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011) ("Direct infringement . . . require[s] no more than the unauthorized use of a patented invention."). Accordingly, to plead a claim for patent infringement, Plaintiff "must first identify which patent claims the defendant infringed." *Chan Soo Kim v. Green Tea Ideas, Inc.*, No. 3:17cv449 (JAG), 2018 WL 1172998, at *2 (E.D. Va. Mar. 6, 2018) (citing *Jenkins v. LogicMark, LLC*, No. 3:16cv751, 2017 WL 376154, at *3 (E.D. Va. Jan. 25, 2017)). Plaintiff "must also specify which features of an accused product correspond to the limitations in the allegedly infringed patent" and "identify with 'particularity *how* each allegedly infringing feature of the accused products infringes' the patent, literally or under the doctrine of equivalents. *Id.* (quoting *Jenkins*, 2017 WL 376154, at *3).

Here, Plaintiff's Amended Complaint contains factual allegations sufficient to state a claim for direct patent infringement. First, the Amended Complaint clearly identifies the '256 Patent as the patent at issue and alleges Plaintiff's right to enforce the '256 Patent. (Dkt. No. 15 ¶¶ 2, 29.) Second, the Amended Complaint alleges that Defendants do not enjoy or benefit from any rights in or to '256 Patent and details how the Accused Products sold by Defendants infringe, at a

minimum, claim 1 of the '256 Patent. (*Id.* ¶¶ 18, 21–42.) Specifically, the Amended Complaint alleges that the Accused Products "come in one of three different structural configurations," and that each configuration includes all of the elements of claim 1 of the '256 Patent—namely, "a base having a fuel chamber at its upper end and a conduit portion at its lower end," a "fuel chamber portion . . . oriented to hold fuel," and a "conduit portion . . . disposed below the floor." (Dkt. No. 15-2 at 16; *see also* Dkt. No. 15 ¶ 31 ("The [infringing] devices include a base having a fuel chamber portion and conduit portion with a channel to an aperture, where when the fuel in the fuel chamber portion is ignited, the channel facilitates flow of smoke downward from the fuel chamber portion through the aperture and thus directly . . . infringe claims 1–19 of the '256 Patent.").) Moreover, Exhibits B, C, and D to the Amended Complaint provide lists of Defendants selling Accused Products in each of the three configurations, as well as claim charts comparing the three configurations of the Accused Products with the elements of claim 1 of the '256 Patent. (Dkt. No. 15 ¶ 24; *see also* Dkt. Nos. 15-3, 15-4, and 15-5.) Third, the Amended Complaint alleges that Defendants infringe the '256 Patent by "making, using, offering to sell, selling and/or importing into the United States, devices for imparting smoked flavors to beverages and foodstuffs, that infringe the asserted claims in the United States." (*Id.* ¶ 30.) The undersigned finds that these allegations are sufficient to establish a plausible claim for direct infringement of the '256 Patent.

### 2. *Indirect Infringement*

Plaintiff also alleges that Defendants are liable for indirect infringement of the '256 Patent. (Dkt. No. 15 ¶ 45.) Indirect infringement can occur by inducing or contributing to the direct infringement of a patent. 35 U.S.C. §§ 271(b)–(c). Plaintiff asserts that Defendants are liable for indirect infringement under the inducement theory. (*Id.* ¶¶ 30–32, 34, 45.) Unlike direct infringement, indirect infringement requires the infringer's knowledge that "the induced acts

constitute patent infringement." *Global-Tech Appliances*, 563 U.S. at 764. Because the undersigned finds that the Amended Complaint states a claim for direct patent infringement under 35 U.S.C. § 271(a), and because any type of infringement will justify the relief requested by Plaintiff, the undersigned does not address Plaintiff's additional theory of indirect infringement.

### F.     Requested Relief

In the Memorandum in Support of Plaintiff's Motion for Default Judgment, Plaintiff requests a damages award and a permanent injunction. (Dkt. No. 215 at 10, 16.) The undersigned considers each form of requested relief in turn.[5]

#### 1.    *Damages*

Unlike liability, allegations concerning damages are not admitted upon default. *See* Fed. R. Civ. P. 8(b)(6). Instead, the Court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

Under the Patent Act, when a plaintiff establishes infringement of a utility patent, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Thus, utility patent infringers may be liable for lost profits or a reasonable royalty. *See Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990) ("The two methods by which damages are usually calculated under § 284 are assessment of actual damages (the profits the patentee lost due to the infringement) or, if actual damages cannot be ascertained, determination of a reasonable royalty."). Damages

---

[5] While Plaintiff's proposed order includes an award of attorneys' fees and costs, Plaintiff did not request an award of attorneys' fees and costs in its Amended Complaint or Memorandum in Support of Motion for Default Judgment. (*See* Dkt. No. 214-2.) Accordingly, the undersigned does not recommend an award that includes them.

awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Here, Plaintiff requests that the Court calculate damages "using a reasonabl[e] royalty rate of $5.00 per unit, determined by Thousand Oaks CEO Bryan Weisberg." (Dkt. No. 215 at 10.) In his declaration filed in support of Plaintiff's Motion for Default Judgment, Mr. Weisberg states that he oversaw "the licensing of Thousand Oaks' patent rights for the design patent U.S. Patent No. D944,594 (the ''D594 Patent') titled 'Smoker Device'" in a prior case against "Schedule A" defendants, *TOB LLC v. The Partnerships, etc.*, Case No. 1:23-cv-3378 (D. Ill. May 30, 2023).[6] (Dkt. No. 215-2 ¶ 4.) In that case, "[m]ost of the [80] licensees paid five dollars per unit sold . . . ." (*Id.*) Based on his knowledge of the industry and experience negotiating licenses in the Northern District of Illinois case, related cases in this District involving the '256 Patent,[7] and the instant case, Mr. Weisberg asserts that "a reasonable royalty for the remaining Schedule A Defendants should be five dollars per infringing unit sold." (*Id.* ¶ 7.)

Using the five dollar per infringing unit royalty rate and sales data received from Amazon,[8] Mr. Weisberg calculated the royalties owed by the Defaulting Defendants as follows (*id.* ¶ 9):

---

[6] In that case, the U.S. District Court for the Northern District of Illinois found that the Schedule A defendants were liable for infringement of two of Thousand Oaks' design patents—D944,594 S and D976,646 S. (Dkt. No. 63 at 6.)

[7] The related cases are *Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.*, Case No. 1:23-cv-1560 (E.D. Va. Nov. 11, 2023), *Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.*, Case No. 1:23-cv-1563 (E.D. Va. Nov. 11, 2023). In those cases and the instant case, Plaintiff "has granted approximately 145 licenses to the '256 Patent to Schedule A Defendants." (Dkt. No. 215-2 ¶ 6.) Most of the licensees in those cases paid five dollars per unit sold, as well. (*See* Dkt. No. 215 at 10.)

[8] Amazon provided the sales data to Kendal Sheets, counsel for Plaintiff in this matter. In his declaration filed in support of Plaintiff's Motion for Default Judgment, Mr. Sheets states that he "requested contact and sales information of each of the defendants in Schedule A to the Complaint," and that Amazon sent "an Excel spreadsheet with the requested information" titled

| Defendant No. | Amazon Seller Name (Sch. A) | Amazon Seller ID | Infringing ASIN Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 8 | FLYBEAST DIRECT | A1PN1D90H62TDY | 5,652 | $28,260.00 |
| 15 | ecolll | A15L30FMJ6NUEZ | 1,387 | $6,935.00 |
| 29 | aoiko | A359Z652EOHYXV | 198 | $990.00 |
| 32 | OSNAT | A3AC2DXARR39E1 | 1,545 | $7,725.00 |
| 36 and 81 | RongHeKeJi | AGGFZ8E3PGAKV | 729 | $3,645.00 |
| 38 and 48 | jiuyishop | A257QMJ1SM0CC1 | 47 | $235.00 |
| 39 | Daaaaa Mai | A2CI961UPLGOWS | 1,696 | $8,480.00 |
| 44 | Easybos | A1CYH9GJXPXOAO | 4,994 | $24,970.00 |
| 47 | Top TFS | A241ERRNAIT9PD | 1,847 | $9,235.00 |
| 52 | MIDA 2U | A1M83DQTQXCFDT | 186 | $930.00 |
| 53[9] | La Cava | A1LS7RGO6P4K0E | 349 | $1,745.00 |
| 55 | ANCHGPO | A34G1H6CW0D2KG | 368 | $1,840.00 |
| 58 | YANGYIYY | A3GYGJLMZCUHDW | 98 | $490.00 |
| 59 | DSKWR-USA | A3RCE03RQ63T9V | 31 | $155.00 |
| 66 | JAVLO | A17BR4S62M9FE1 | 153 | $765.00 |
| 75 | KAERMM | A2L97F4KLZJRL6 | 31 | $155.00 |
| 77 | TrendySupplyStore | A3H1L5RQTOYDUF | 127 | $635.00 |
| 79 | SLOW LIVING | A2XFVTJV62TO26 | 3 | $15.00 |
| 83 | Oxmok-US | A1S7BWF1QD0MUX | 304 | $1,520.00 |
| 89 | OWAYIDA | A1ET80676X8NAP | 4,073 | $20,365.00 |
| 96 | Nanhe Home Furnishings | A2V1U4N0CX5I7J | 0 | $1000.00 |
| 97[10] | Future Charm-US | A1UOIQJDMTVAPO | 195 | $975.00 |

'Thousand 24-cv-958 Production - full.xlsx.'" (Dkt. No. 215-1 ¶¶ 5–6.) Mr. Weisberg attests that the sales data he references in his declaration in support of Plaintiff's Motion for Default Judgment "are true and correct copies of the data contained in the Amazon.com worksheet . . . ." (Dkt. No. 215-2 ¶ 8.)

[9] As state above, Defendant No. 53 has since been dismissed from the case. (*See* Dkt. No. 227.)

[10] As stated above, Defendant No. 97 has since been dismissed from the case. (*See* Dkt. No. 226.)

| Defendant No. | Amazon Seller Name (Sch. A) | Amazon Seller ID | Infringing ASIN Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 98 | Zaspaver | ADKGMWP3CE9MJ | 0 | $1000.00 |
| | | Total | 24,013 | $122,065.00 |

In total, Mr. Weisberg asserts that Plaintiff is owed $122,065.00 in damages as a result of the Defaulting Defendants' infringement of the '256 Patent. (*Id.*) The undersigned finds that Mr. Weisberg's computation method of five dollars per infringing unit sold by the Defaulting Defendants is supported by the evidence presented. Plaintiff has not, however, provided any evidence to support its request for damages for items "offered for sale" but not actually sold by Defendant Nos. 96 and 98.[11] (*Id.* ¶ 10.) Indeed, Mr. Weisberg's conclusory assertion that Plaintiff is entitled to "a reasonable compensation" of $2,000.00 from Defendant Nos. 96 and 98 appears to be based solely on his "understand[ing] that the patent laws allow Thousand Oaks to obtain damages on items offered for sale, not just those that have been sold." (*Id.*) The undersigned cannot "make an independent determination regarding damages" based on this assertion alone. *Wilcox*, 473 F. Supp. 3d at 584. Additionally, the undersigned declines to award damages for infringing units sold by Defendants that have been dismissed from this case (i.e., Defendant Nos. 53 and 97).

For the reasons stated above, the undersigned finds that Plaintiff should be awarded compensatory damages in the amount of $117,345.00 (i.e., five dollars per infringing unit actually sold by the Defaulting Defendants that remain in this action).

---

[11] As reflected in the chart above, which is based on sales data Plaintiff received from Amazon, Defendant Nos. 96 and 98 have not sold any infringing devices.

15

2.  *Permanent Injunction*

Plaintiff requests that the Court "convert the preliminary injunction into a permanent injunction to prevent further unlawful conduct by the Defaulting Defendants." (Dkt. No. 215 at 16.) The Patent Act provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) [T]hat it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

This Court previously granted Plaintiff's request for a TRO, finding that (1) Plaintiff is likely to succeed on the merits of its utility patent infringement claim; (2) Plaintiff will be irreparably harmed absent a TRO because Defendants are likely to transfer their assets out of any account in the United States upon learning of this lawsuit or any judgment against them, which would deprive Plaintiff of the ability to obtain damages; (3) the balance of equities tilts in Plaintiff's favor; and (4) the public has an interest in preventing consumer confusion and vindicating Plaintiff's patent rights. (Dkt. No. 20 at 2.) The Court also granted Plaintiff's request for a preliminary injunction, which requires the same standard as that for granting a TRO. (Dkt. No. 69.)

For similar reasons, the undersigned finds that a permanent injunction is appropriate here. First, Plaintiff has suffered and will continue to suffer irreparable injury. The Defaulting Defendants operate the Infringing Webstores, which advertise, promote, offer for sale, and sell

Accused Products. (Dkt. No. 15 ¶ 6.) There is good cause to believe that the Accused Products will continue to appear in the marketplace, and that consumers are likely to be misled, confused, and/or disappointed by the quality of these products. (*Id.* ¶¶ 15, 16, 40, 47, 48.) Additionally, the Defaulting Defendants' sales compete directly with Plaintiff's sales, and Plaintiff will continue to suffer losses in sales and of reputation absent an injunction. (*Id.* ¶ 16.)

Second, other remedies at law are inadequate to compensate Plaintiff. *See Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456–57 (Fed. Cir. 1988) ("It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole."). Despite receiving proper service of process, the Defaulting Defendants have failed to respond to this lawsuit. This lack of an appropriate response demonstrates a near certainty of continuing patent infringement and makes it impossible to determine the actual profits and damages in the case. There is also reason to believe that the Defaulting Defendants are likely to transfer their assets out of any account in the United States upon learning of any judgment against them, which would deprive Plaintiff of the ability to obtain damages. (Dkt. No. 69 at 2); *see also Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, No. 1:19cv1574, 2020 WL 4283925, at * (E.D. Va. Dec. 20, 2019).

Third, the balance of hardships weighs in Plaintiff's favor. The only hardship the Defaulting Defendants would experience from a permanent injunction would be the requirement to follow clearly established patent law. Plaintiff, on the other hand, stands to lose profits and suffer a continued infringement of its legal rights, which far outweigh any purported hardship that the Defaulting Defendants may face.

Fourth, the public interest favors an injunction. Granting injunctive relief in this matter would do nothing to disserve the public. *Christopher Phelps & Assocs.*, 492 F.3d at 545. Rather, an injunction would prevent confusion, enforce Plaintiff's legal rights, and prevent the public from being misled into believing the Defaulting Defendants' products are associated with Plaintiff and its goodwill and reputation. The undersigned thus finds that injunctive relief is appropriate and the best means to prevent future harm to Plaintiff due to the Defaulting Defendants' continuing infringement and failure to respond to this lawsuit.

## IV.    Recommendations

For the reasons outlined above, the undersigned recommends that the Court **GRANT** Plaintiff's Motion for Default Judgment (Dkt. No. 214) and enter default judgment for Plaintiff and against the Defaulting Defendants. The undersigned further recommends an award of a reasonable royalty of five dollars per infringing unit sold, as reported in the following chart, from each of the Defaulting Defendants for infringing use of Patent No. 11,744,256. Finally, the undersigned recommends that Plaintiff receive the injunctive relief requested, including that the Defaulting Defendants be permanently enjoined from infringing Plaintiff's patent rights, as outlined in Plaintiff's proposed order (*see* Dkt. No. 214-2).

| Defendant No. | Amazon Seller Name (Sch. A) | Amazon Seller ID | Infringing ASIN Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 8 | FLYBEAST DIRECT | A1PN1D90H62TDY | 5,652 | $28,260.00 |
| 15 | ecolll | A15L30FMJ6NUEZ | 1,387 | $6,935.00 |
| 29 | aoiko | A359Z652EOHYXV | 198 | $990.00 |
| 32 | OSNAT | A3AC2DXARR39E1 | 1,545 | $7,725.00 |
| 36 and 81 | RongHeKeJi | AGGFZ8E3PGAKV | 729 | $3,645.00 |
| 38 and 48 | jiuyishop | A257QMJ1SM0CC1 | 47 | $235.00 |
| 39 | Daaaaa Mai | A2CI961UPLGOWS | 1,696 | $8,480.00 |

| Defendant No. | Amazon Seller Name (Sch. A) | Amazon Seller ID | Infringing ASIN Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 44 | Easybos | A1CYH9GJXPXOAO | 4,994 | $24,970.00 |
| 47 | Top TFS | A241ERRNAIT9PD | 1,847 | $9,235.00 |
| 52 | MIDA 2U | A1M83DQTQXCFDT | 186 | $930.00 |
| 55 | ANCHGPO | A34G1H6CW0D2KG | 368 | $1,840.00 |
| 58 | YANGYIYY | A3GYGJLMZCUHDW | 98 | $490.00 |
| 59 | DSKWR-USA | A3RCE03RQ63T9V | 31 | $155.00 |
| 66 | JAVLO | A17BR4S62M9FE1 | 153 | $765.00 |
| 75 | KAERMM | A2L97F4KLZJRL6 | 31 | $155.00 |
| 77 | TrendySupplyStore | A3H1L5RQTOYDUF | 127 | $635.00 |
| 79 | SLOW LIVING | A2XFVTJV62TO26 | 3 | $15.00 |
| 83 | Oxmok-US | A1S7BWF1QD0MUX | 304 | $1,520.00 |
| 89 | OWAYIDA | A1ET80676X8NAP | 4,073 | $20,365.00 |
| | | Total | 23,469 | $117,345.00 |

## V. Notice

Through the Court's electronic filing system and by email, as described below, the Defaulting Defendants are notified that objections to this Report and Recommendation must be filed within 14 days of service of this Report and Recommendation, and a failure to file timely objections waives appellate review of the substance of the Report and Recommendation and waives appellate review of any judgment or decision based on the proposed findings of fact and recommendations therein. Plaintiff is directed to email a copy of this Report and Recommendation to the Defaulting Defendants at each Defendant's verified Amazon.com email address, consistent with Plaintiff's service of the Motion for Default Judgment on the Defaulting Defendants. (*See* Dkt. No. 218.)

**ENTERED** this 13th day of August, 2025.

/s/ LRV
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia